**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| SABLE NETWORKS, INC. AND SABLE IP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FORCEPOINT LLC, <br><br> Defendant. | Case No. 6:21-cv-00241-ADA <br><br> JURY TRIAL DEMANDED |

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

III.    LEGAL STANDARDS ....................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 4

        A.      Sable Fails to Properly Plead Direct Infringement ................................. 5

                1.      The '431 Patent ................................................................... 7

                2.      The '932 Patent ................................................................... 8

                3.      The '593 Patent ................................................................... 9

                4.      The '501 Patent ................................................................. 10

        B.      Sable Fails to Properly Plead Indirect and Willful Infringement ........ 12

                1.      The Complaint is Fatally Flawed for Failing to Adequately Plead
                        Pre-Suit Knowledge of the Asserted Patents ............................ 12

                2.      Sable Fails to Sufficiently Plead Additional Elements of
                        Contributory Infringement ....................................................... 15

                3.      Sable Fails to Allege Any Facts to Plead Willful Infringement ............... 16

V.      CONCLUSION.................................................................................................. 16

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*,
    No. W:13-CV-00365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .................................15

*Artrip v. Ball Corp.*,
    735 Fed. Appx. 708 (Fed. Cir. 2018)..........................................................................................3

*Arunachalam v. Apple, Inc.*,
    806 Fed. Appx. 977 (Fed. Cir. Feb. 13, 2020) .........................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................1, 3, 4, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................1, 3, 4, 5, 6

*Chan Soo Kim v. Green Tea Ideas, Inc.*,
    2018 WL 1172998 (E.D. Va. Mar. 6, 2018) ............................................................................7

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632, 135 S. Ct. 1920 (2015)......................................................................................4

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)...............................................................................................13

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020).......................5, 6

*DSU Med. Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)...............................................................................................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
    909 F.3d 398 (Fed. Cir. 2018)...................................................................................................4

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)...............................................................................................15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016)..............................................................................................................16

*Inhale, Inc. v. Gravitron, LLC*,
    1:18-cv-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ...........................................4

*Joao Control & Monitoring Sys., LLC v. Protect America, Inc.*,
    No. 1:14-cv-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015)......................................4

*Lifetime Industr., Inc., v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017).............................................................................4, 8

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)...............................................................................................12

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002)...............................................................................4

*MONKEYmedia, Inc. v. Twentieth Century Fox Home Entm't, LLC*,
226 F. Supp. 3d 693 (W.D. Tex. Dec. 8, 2016) .....................................................13

*N. Star Innov'ns, Inc. v. Micron Tech., Inc.*,
2017 WL 5501489 (D. Del. Nov. 16, 2017) *adopted by* No. 1:17-cv-506-LPS, Dkt. No. 37
(D. Del. Jan. 3, 2018) ...............................................................................................5

*Parity Networks, LLC v. Cisco Sys., Inc.*,
No. 6:19-CV-00207-ADA, 2019 WL 3940952 (W.D. Tex. July 26, 2019)............4, 13, 14, 16

*Parus Holdings Inc. v. Apple Inc. et al.*,
6:19-cv-00432-ADA (W.D. Tex. Feb. 19, 2020) ..............................................13, 14

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
2018 WL 5630585 (D. Del. Oct. 31, 2018) ..............................................................6

*Proxyconn Inc. v. Microsoft Corp.*,
2012 WL 1835680 (C.D. Cal. May 16, 2012) ........................................................13

*Sable Networks, Inc. v. Check Point Software Techs., Ltd.*,
1:21-cv-00201, Dkt. 1 (D. Del. Feb. 12, 2021)........................................................6

*Superior Industr., LLC v. Thor Glob. Enter. Ltd.*,
700 F.3d 1287 (Fed. Cir. 2012)................................................................................3

*VLSI Tech. v. Intel Corp.*,
No. 6:19-cv-254-ADA, Dkt. 52 (W.D. Tex. Aug. 6, 2019)...............................13, 14

*Xpoint Techs., Inc. v. Microsoft Corp.*,
730 F. Supp. 2d 349 (D. Del. 2010).......................................................................13

## STATUTES

35 U.S.C. § 271(c) .................................................................................................15

## OTHER AUTHORITIES

FED. R. CIV. P. 12.............................................................................................1, 4, 16

## I.  INTRODUCTION

Defendant Forcepoint LLC ("Forcepoint") moves under Rule 12(b)(6) to dismiss Plaintiffs' Original Complaint for Patent Infringement (Dkt. 1) ("Complaint"), filed by Plaintiffs Sable Networks, Inc. and Sable IP, LLC (collectively "Sable"), for failure to state a claim upon which relief can be granted.  While Sable's Complaint contains several pages asserting one or more claims of the four asserted patents, the volume of paper consumed fails to plead facts to support the bald allegations of infringement.  Instead of explanations that would allow a reasonable inference that Forcepoint meets each element of the asserted claims, the complaint is filled with a repetition of the claim elements.  This fails to satisfy the pleading standards under *Twombly* and *Iqbal*.  By relying the claim elements without more, Sable fails to meet its obligation to explain *what Forcepoint does* and *how* the alleged conduct satisfies the claim elements.

Sable's claims of induced, contributory, and willful infringement are similarly unsupported.  Sable's fails to plausibly plead that Forcepoint had pre-suit knowledge of the patents.  Even if Sable were to sufficiently plead pre-suit knowledge, the claims for induced infringement and enhanced damages for willful infringement are still deficient because they fail to plead facts plausibly indicating direct infringement by a third party.  In addition, Sable's claim for contributory infringement finds even less support; it is asserted in the section on Jurisdiction and Venue but is not accompanied by ***any*** factual assertions.  These bare bones allegations of the Complaint do not satisfy the pleading requirement of *Twombly* & *Iqbal* and thus fail to state a claim for direct, indirect, or willful infringement and should be dismissed in their entirety pursuant to FED. R. CIV. P. 12(b)(6).

## II.  STATEMENT OF FACTS

Sable filed the Complaint (Dkt. 1) on March 10, 2021, accusing Forcepoint of directly, indirectly, and willfully infringing U.S. Patent Nos. 6,954,431 ("the '431 patent"), 6,977,932 ("the

'932 patent"), 8,243,593 ("the '593 patent"), and 9,774,501 ("the '501 patent") (collectively "the Asserted Patents").  Sable contends that Forcepoint infringes one or more claims of each asserted patent by "making, using, testing, offering for sale, and/or selling products [and services]." Complaint  ¶¶ 83, 102, 122, 144;  *see  also*  Complaint  ¶¶ 80, 93, 116, 143  (alleging  direct infringement by "making, using, offering for sale, and/or selling" technology or products and services).  Sable merely repeats language corresponding to claim elements for each asserted patent with "[o]ne or more Forcepoint [] Products" or "[t]he Forcepoint [] Products" at the beginning of each element.  *See* Complaint ¶¶ 73–79 ('431 patent), ¶¶ 94–99 ('932 patent), ¶¶ 113, 117–21 ('593 patent), ¶¶ 132–40 ('501 patent).  Throughout the Complaint, Sable fails to explain *what* Forcepoint is doing or *how* the alleged conduct practices the claim; the jumble of claim element recitations is the only notice provided.

Sable alleges contributory infringement in the section of the Complaint on "Jurisdiction and Venue" by stating that Forcepoint "contributes to . . . ship, distribute, make, use, offer for sale, sell,  import,  and/or  advertise  (including  the  provision  of  an  interactive  web  page)  infringing products and/or services in the United States and the Western District of Texas."  Complaint, ¶ 23. However, there is no mention, for example, of a lack of substantial non-infringing uses in the discussion of contributory infringement.  *Id.*

Similarly, Sable's induced infringement and willful infringement claims fail to allege that Forcepoint had knowledge of the Asserted Patents before the filing of suit.  Sable asserts that Forcepoint had knowledge of the Asserted Patents "since at least service . . . or shortly thereafter" and knew of its alleged infringement "by way of this lawsuit."  Complaint ¶¶ 85, 104, 124, 146. Sable also contends that each of the Asserted Patents is "well-known within the industry as demonstrated by multiple citations to the [] patent in published patents and patent applications

assigned to technology companies and academic institutions."  Complaint ¶¶ 87, 106, 126, 148. However, there is no allegation that Forcepoint knew of the Asserted Patents or even an assertion that an asserted patent was cited to in published patents or patent applications assigned to Forcepoint.

## III.    LEGAL STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  To meet this plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

In addition, "under any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'"  *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent).  As the Federal Circuit recently held, for a plaintiff to "provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Arunachalam v. Apple, Inc.*, 806 Fed. Appx. 977, 981 (Fed. Cir. Feb. 13, 2020) (quoting *Twombly*, 550 U.S at 558, internal indicia of quotation omitted).

The pleading standards of *Twombly* and *Iqbal* apply to claims of induced infringement. *Superior Industr., LLC v. Thor Glob. Enter. Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012).  "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed

*specific intent* to encourage another's infringement." *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (emphasis added) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)).  The Supreme Court has held that "liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015) (internal indicia of quotation omitted).

As this Court itself has held, "[t]o adequately plead a claim of induced infringement, a plaintiff must demonstrate that 'the defendant knew of the patent and that the induced acts constitute patent infringement.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *Commil*, 135 S. Ct. at 1926). So too has held the Federal Circuit, which explained that "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Industr., Inc., v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (internal citation and indicia of quotation omitted).

Similarly, this standard—the *Twombly/Iqbal* standard—applies to claims of contributory and willful infringement. *See Joao Control & Monitoring Sys., LLC v. Protect America, Inc.*, No. 1:14-cv-134-LY, 2015 WL 3513151, at *3 (W.D. Tex. Mar. 24, 2015) ("[T]he general principles of *Twombly* and *Iqbal* must be applied to indirect infringement claims.") (internal citation omitted); *Inhale, Inc. v. Gravitron, LLC*, 1:18-cv-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (applying *Twombly/Iqbal* standard to allegations of willful infringement).

## IV.   ARGUMENT

Sable's Complaint should be dismissed pursuant to Rule 12, because its claims of direct, induced, contributory, and willful infringement do not satisfy the *Twombly/Iqbal* pleading

standard.  The Complaint does not plausibly explain how Forcepoint is alleged to directly infringe the Asserted Patents.  Also, the Complaint fails to allege that Forcepoint had pre-suit knowledge of the Asserted Patents, dooming its claims of induced, contributory, and willful infringement.  Because none of Sable's claims are adequately plead, the Court should dismiss the Complaint in its entirety.

### A.      Sable Fails to Properly Plead Direct Infringement

Sable's Complaint fails to plausibly allege that Forcepoint directly infringed the Asserted Patents as it includes no factual basis supporting the allegation that Forcepoint infringes one or more claims of each asserted patent by "making, using, testing, offering for sale, and/or selling products [and services]."  Complaint ¶¶ 83, 102, 122, 144; *see also* Complaint ¶¶ 80, 93, 116, 143 (alleging direct infringement by "making, using, offering for sale, and/or selling" technology or products and services).  The only support Sable provides for its direct infringement allegation is a bare bones repetition of language corresponding to the claim elements.  *See* Complaint ¶¶ 73–79 ('431 patent), ¶¶ 94–99 ('932 patent), ¶¶ 113, 117–21 ('593 patent), ¶¶ 132–40 ('501 patent).

When a complaint fails to explain ***how*** the defendant is alleged to have directly infringed the patent, "either repleading or dismissal is necessary."  *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *5 (W.D. Tex. Feb. 11, 2020) (claims of direct infringement were deficient "[b]ecause the Original Complaints were completely silent ***how*** Microsoft and Google could have directly infringed claim 1 during testing") (emphasis added) (citing *Twombly*, 550 U.S. at 555).  Other district courts agree that a complaint that merely states in conclusory language that a defendant infringes is not sufficient; as the District of Delaware has held, "There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so."  *N. Star Innov'ns, Inc. v. Micron Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16,

2017) (emphasis original) *adopted by* No. 1:17-cv-506-LPS, Dkt. No. 37, slip op. at 1 (D. Del. Jan. 3, 2018) (dismissing complaint).

Unlike the complaint in *De La Vega*, which included a short description for at least some of the limitations of the patent claim at issue, here Sable provides no description for *any* of the claims mapped in the complaint.  Rather, for each patent claim asserted, Sable provides repeats language corresponding to the claim and states "[o]ne or more Forcepoint [] Products" or "[t]he Forcepoint [] Products" do whatever the claim element or preamble says.  *See* Complaint ¶¶ 73– 79 ('431 patent), ¶¶ 94–99 ('932 patent), ¶¶ 113, 117–21 ('593 patent), ¶¶ 132–40 ('501 patent). The formulaic nature of Sable's approach is demonstrated by the fact that it is the same approach that Sable took in its complaint against Check Point Software Technologies.  *Compare* Complaint ¶¶ 73–79 ('431 patent), ¶¶ 94–99 ('932 patent), ¶¶ 113, 117–21 ('593 patent), ¶¶ 132–40 ('501 patent) *with Sable Networks, Inc. v. Check Point Software Techs., Ltd.*, 1:21-cv-00201, Dkt. 1 (D. Del. Feb. 12, 2021) ("Check Point Complaint") ¶¶ 93–98 ('431 patent), ¶¶ 117–22 ('932 patent), ¶¶ 170, 174–78 ('593 patent), ¶¶ 220–28 ('501 patent).  In fact, Sable makes nearly the same allegations here as in the Check Point Complaint.

Instead of the requisite notice required under *Iqbal* and *Twombly*, Plaintiffs fail to include any facts or explanation of how the accused products relate to the elements of the claims.  Instead, Sable relies on the reader to decipher how the products demonstrate infringement of the asserted claims.  The complaint dismissed in the *De La Vega* case had more substance than what Sable offers here.  *See De La Vega* at 11–13 (dismissing complaint that contained a written description with the screenshots for some but not all of the claim limitations).  Other courts have also dismissed complaints with more detail than what is offered here.  *E.g. Promos Techs., Inc. v. Samsung Elecs. Co.*, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (finding that direct infringement claims

which mirror the claim language of the patent are insufficient—without more—to plead direct infringement under 12(b)(6)); *Chan Soo Kim v. Green Tea Ideas, Inc.*, 2018 WL 1172998, at *2 (E.D. Va. Mar. 6, 2018) (dismissing direct infringement claims when the complaint merely copied and pasted patent language and inserted a photograph of the accused product with written notations for some but not all of the claim elements).

Sable alleges infringement by using language similar to what is recited in the claims.  The patents and claims are discussed below in the order presented in the complaint.

### 1.  The '431 Patent

The Complaint alleges infringement of at least claim 1 of the '431 patent, but Sable fails to support its bare bones allegation.  *See* Complaint ¶ 83.  Claim 1 of the '431 patent claims "method for ***managing*** data traffic through a network,  the data traffic comprised of a plurality of microflows."  Complaint, Exhibit A ('431 patent), 17:19–20.  The steps of the method comprise "***determining*** a capacity of a buffer containing a microflow based on a characteristic," "***assigning*** an acceptable threshold value for the capacity of the buffer over a predetermined period of time," "***delegating*** a portion of available bandwidth in the network to the microflow," and "***using*** the buffer for damping jitter associated with the microflow."  Complaint, Exhibit A ('431 patent), 17:19–30 (claim 1) (emphasis added unless otherwise indicated); *see also* 17:42–45 (claim 7) ("delegating the portion of available bandwidth further comprises dynamically ***setting*** a weighting factor to partition a bandwidth allocation for the microflow"), 18:27–29 (claim 19) ("a ***delay variation*** substructure configured to provide a buffer value to dampen jitter in a transmission of the microflow").

Similarly, the Complaint alleges "[o]ne or more of the Forcepoint '431 Products include technology for ***managing*** data traffic comprising a plurality of micro-flows through a network."  Complaint ¶ 73.  In correspondence to the claim elements, Sable asserts that the products

"*determine* the capacity of a buffer containing a micro-flow based on a characteristic," "*assign* an acceptable threshold value for the capacity of the buffer over a predetermined period of time," "*delegate* a portion of available bandwidth in the network to the micro-flow," "enable the *setting* of thresholds for a buffer that include the ability to set a threshold as a percentage of the buffer," "*use* the buffer for damping jitter associated with the micro-flow," and "use buffers to limit jitter which is *delay variance*." Complaint ¶¶ 74–79. This generic recitation of claim elements, without additional explanation or analysis, does not provide Forcepoint with notice of how its products are alleged to infringe. *See Lifetime Indus.*, 869 F.3d at 1379 (a complaint must "place the alleged infringer on notice of what activity . . . is being accused of infringement").

### 2.   The '932 Patent

The Complaint alleges infringement of at least claim 1 of the '932 patent , but Sable fails to support its bare bones allegation. *See* Complaint ¶ 102. Claim 1 of the '932 patent claims a "method for network tunneling *utilizing* flow state information." Complaint, Exhibit B ('932 patent), 19:12–13. The steps of the method comprise "*creating* a flow block having flow state information for a received first data packet of a micro-flow," "*storing* a tunnel identifier for the micro-flow in the flow block, the tunnel identifier *identifying* a selected network tunnel to be used to transmit the data packet," "*indexing* an aggregate flow block *using* the tunnel identifier, the aggregate flow block having tunnel specific information for the selected network tunnel," and "*transmitting* the data packet using the selected network tunnel based on the tunnel specific information." Complaint, Exhibit B ('932 patent), 19:14–23. The method also requires that "statistics for the selected network tunnel are *stored* using the aggregate flow block." Complaint, Exhibit B ('932 patent), 19:24–25.

Similarly, the Complaint alleges "[o]ne or more of the Forcepoint '932 Products *utilize* flow state information to perform a network tunneling method." Complaint ¶ 94. In

correspondence to the claim elements, Sable asserts that the products "*create* a flow block having flow state information for a received first data packet of a micro-flow," "*store* a tunnel identifier for the micro-flow in the flow block, the tunnel identifier *identifying* a selected network tunnel to be used to transmit the data packet," "*index* an aggregate flow block using the tunnel identifier," "*utilize* an aggregate flow block with tunnel specific information for the selected network tunnel and that *stores* statistics for the selected network tunnel," and "*transmit* data packets using the selected network tunnel based on the tunnel specific information." Complaint ¶¶ 95–99. Similar to the '431 patent, this generic recitation of claim elements for the '932 patent, without additional explanation or analysis, does not provide Forcepoint with notice of how its products are alleged to infringe.

### 3.  The '593 Patent

The Complaint alleges infringement of at least claim 4 of the '593 patent, but Sable fails to support its bare bones allegation. *See* Complaint ¶ 122. Claim 4 of the '593 patent claims a "machine implemented method for *processing* a flow, the flow comprising a series of information packets." Complaint, Exhibit C ('593 patent), 11:23–24. The steps of the method comprise "*maintaining* a set of behavioral statistics for the flow, wherein the set of *behavioral statistics is updated based on each information packet* belonging to the flow, as each information packet belonging to the flow is processed, "*determining*, based at least partially upon the set of behavioral statistics, whether the flow is exhibiting undesirable behavior, *regardless of the presence or absence of congestion*," and "in response to a determination that the flow is exhibiting undesirable behavior, *enforcing* a penalty on the flow." Complaint, Exhibit C ('593 patent), 11:26–36.

Similarly, the Complaint alleges "[o]ne or more of the Forcepoint '593 Products include technology for *processing* a flow of a series of information packets." Complaint ¶ 113. In correspondence to the claim elements, Sable asserts that the products "*maintain* a set of behavioral

statistics based on each and every information packet belonging to a flow," "*maintain* a set of behavioral statistics for the flow, wherein the set of behavioral statistics is *updated* based on each information packet belonging to the flow, as each information packet is processed," "enable the *generation of behavioral statistics based on each packet* that is processed," "*determine*, based at least partially upon the set of behavioral statistics, whether the flow is exhibiting undesirable behavior," "determine whether the flow is exhibiting undesirable behavior *regardless of the presence or absence of congestion*," and "*enforce* a penalty on the flow in response to a determination that the flow is exhibiting undesirable behavior."  Complaint ¶¶ 113, 117–21.  This generic recitation of claim elements for the '593 patent, without additional explanation or analysis, does not provide Forcepoint with notice of how its products are alleged to infringe.

### 4.   The '501 Patent

The Complaint alleges infringement of at least claim 1 of the '501 patent, but Sable fails to support its bare bones allegation.  *See* Complaint ¶ 144.  Claim 1 of the '501 patent claims a "method for detecting outlier users of a network resource."  Complaint, Exhibit D ('501 patent), 21:44–45.  The steps of the method comprise "*monitoring stream data* associated with a subscriber's usage of a network resource *for a predetermined time interval*," "*deriving*, from the stream data, a flow-count history, where a flow is a communicative connection between a particular source IP address and transport layer port to a particular destination IP address and transport layer port in which all of the packets are using the same protocol, and a flow-count history is a count of the number of flows the subscriber initiates as either the source IP address or destination IP address during a predetermined time period," "*applying the outlier detection* logic to the flow-count history as compared to a plurality of other flow-count histories associated with a plurality of other subscribers," and "*assigning* a flow-count band to the subscriber based on the outlier detection logic as applied to the flow-count history."  Complaint, Exhibit D ('501 patent),

21:46–65; *see also* 22:11–12 (claim 5) ("***applying a mitigating action*** to the subscriber based on the flow-count band assigned to the subscriber"), 22:43-65 (portions of claim 10) ("***track*** flow data of the subscriber, for a predetermined time interval" and "develop ***a flow-count history, where a flow-count history is a count of the number of flows*** the subscriber initiates as either the source IP address or destination IP address during a predetermined time period"), 23:36-37 (portions of claim 18) ("***aggregating*** flow data of a subscriber for a plurality of time intervals, where a flow is a communicative connection between a particular source IP address and transport layer port to a particular destination IP address and transport layer port in which all of the packets are using the same protocol").

In correspondence to the claim elements, Sable asserts that the products "perform the method of ***monitoring stream data*** associated with a user or device's usage of a network resource for a predetermined time," "perform the step of ***deriving*** a flow-count history" that "is generated based on stream data where a flow is a connection between a source IP address and a transport layer port to a destination IP address and transport layer port in which all of the packets use the same protocol," "perform the step of ***applying an outlier detection*** algorithm to the generated flow-count history associated with a user or a device and comparing the flow-count history to flow-count histories associated with other users or devices on the network" / "***apply an outlier detection*** logic (algorithm) to the flow-count pattern as compared to a plurality of other flow-count patterns associated with a plurality of other users," "***assign*** a flow-count band to the user based on the outlier detection algorithm and flow-count history," "***tracking*** flow data of a user subscriber for a predetermined time interval," "***aggregating*** flow data of a user for a number of time periods" in which the flow data includes "network communications between a particular source IP address and transport layer port to a particular destination IP address and transport layer port in which all

of the packets are using the same protocol," "generate ***a flow-count pattern where the flow-count***

***pattern is the count of the number of flows*** the user initiates as either the source IP address or

destination IP address during a predetermined time period," and "***apply a mitigating action*** to the

user concerning the user's access to the network resource based on the flow-count band assigned."

Complaint ¶¶ 132–40.   Again, a generic recitation of claim elements, without additional

explanation or analysis, does not provide Forcepoint with notice of how its products are alleged to

infringe.

### B.    Sable Fails to Properly Plead Indirect and Willful Infringement

To show indirect (induced and contributory) and willful infringement, a patentee must

show direct infringement.  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922

(2014) ("where there has been no direct infringement, there can be no inducement of

infringement").   The patentee bears the burden of showing such direct infringement "for each

instance of indirect infringement."   *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed.

Cir. 2006).  As discussed above, Sable has failed to plead such facts and thus has failed to plead

facts sufficient to support a claim of indirect and willful infringement.  This Court should dismiss

the indirect and willful infringement claims as well.

Setting aside Sable's flawed direct infringement allegations, Sable has also failed to

adequately plead pre-suit knowledge of the Asserted Patents and the additional elements of

contributory infringement.

### 1.    The Complaint is Fatally Flawed for Failing to Adequately Plead Pre-Suit Knowledge of the Asserted Patents

Sable's claims of induced, contributory, and willful infringement must fail because the

Complaint does not allege facts making it plausible that Forcepoint had pre-suit knowledge of the

asserted patent.   "Actual knowledge that the patent would be infringed is required for both

contributory and induced infringement." *MONKEYmedia, Inc. v. Twentieth Century Fox Home Entm't, LLC*, 226 F. Supp. 3d 693, 708 (W.D. Tex. Dec. 8, 2016) (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005)).  A claim for willful infringement also requires that the plaintiff "must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer . . . knew of the patent-in-suit."  *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. Jul. 26, 2019) (internal quotations omitted).

Knowledge of the asserted patent arising solely from the patentee's complaint is not sufficient; as this Court has held, the patentee must allege pre-suit knowledge of the asserted patent to maintain its claim—even for conduct that occurs after the filing of the complaint.  *See Parus Holdings Inc. v. Apple Inc. et al.*, 6:19-cv-00432-ADA (W.D. Tex. Feb. 19, 2020), transcript from hearing on Jan. 31, 2020 at 46–47 (dismissing indirect infringement claims in their entirety when plaintiff's only allegation of knowledge was the filing of the lawsuit); *VLSI Tech. v. Intel Corp.*, No. 6:19-cv-254-ADA, Dkt. 52 at 1–3 (W.D. Tex. Aug. 6, 2019) (dismissing indirect and willful infringement claims for failing to sufficiently allege pre-suit knowledge of the patent).  Courts in other districts agree.  *E.g. Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement."); *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012) ("[R]equiring a Plaintiff to plead knowledge based on facts other than the filing of the present lawsuit furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit.").

Here, Sable does not allege that Forcepoint knew about the Asserted Patents before the filing of the Complaint.  Rather, Sable alleges that Forcepoint had knowledge of the Asserted

Patents "since at least service . . . or shortly thereafter" and knew of its alleged infringement "by way of this lawsuit."   Complaint ¶¶ 85, 104, 124, 146.   Sable also contends that each of the Asserted Patents is "well-known within the industry as demonstrated by multiple citations to the [] patent in published patents and patent applications assigned to technology companies and academic institutions."   Complaint ¶¶ 87, 106, 126, 148.   However, Sable fails to allege facts plausibly showing as of the time of the Complaint that Forcepoint, specifically, knew of the Asserted Patents.   Sable alleges that its patents have been cited by patents and patent applications assigned to several other technology companies, but there is no allegation specific to Forcepoint. *See* Complaint ¶ 12.

Without sufficient pleading of pre-suit knowledge, the best Sable can do is assert that Forcepoint gained knowledge of the asserted patent from the Complaint (something the Complaint itself does not allege).   However, post-suit knowledge is insufficient to support claims of induced, contributory, and willful infringement.   *See Parus Holdings Inc*, No. 6:19-cv-00432-ADA (W.D. Tex. Feb. 19, 2020), transcript from hearing on Jan. 31, 2020 at 46–47 (dismissing indirect infringement claims in entirety when plaintiff only alleged knowledge of the Asserted Patent based on the filing of the complaint); *see also VLSI Tech.*, No. 6:19-cv-254-ADA, Dkt. 52 at 1–3 (doing same).   And a plaintiff "must allege facts plausibly showing that ***as of the time of the claim's filing***, the accused infringer . . . knew of the patent-in-suit" to adequately plead willful infringement.   *Parity Networks*, 2019 WL 3940952, at *3 (emphasis added).   Because the Complaint does not include a plausible allegation of pre-suit knowledge, Sable's claims of induced, contributory, and willful infringement are insufficient and should be dismissed.

### 2.   Sable Fails to Sufficiently Plead Additional Elements of Contributory Infringement

Sable fails to state a claim of contributory infringement because, even if the Complaint successfully pleaded knowledge of the Asserted Patents, it lacks sufficient facts to make Sable's allegations of contributory infringement plausible.  To state a claim for contributory infringement under 35 U.S.C. § 271(c), a plaintiff must plead facts to show that: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Affinity Labs of Tex., LLC v. Toyota Motor N. Am.*, No. W:13-CV-00365, 2014 WL 2892285, at *8 (W.D. Tex. May 12, 2014) (citing *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).  Sable has not plead any facts indicating that Forcepoint had pre-suit knowledge of the Asserted Patents, Section IV.B.1, *supra*, and fails to allege facts plausibly indicating that any of the other elements are satisfied. Thus, Sable has not stated a claim for contributory infringement.

Sable's Complaint fails to factually allege that Forcepoint provided a "material or apparatus for use in practicing a patented process," as required to contributorily infringe under 35 U.S.C. § 271(c); instead, Sable's contributory infringement allegation is based on contribution to "ship, distribute, make, use, offer for sale, sell, import, and/or advertise" allegedly infringing products.  Complaint ¶ 23.  The contributory infringement claim is also deficient because the Complaint contains no allegation whatsoever that Forcepoint's products have no substantial non-infringing uses or that Forcepoint's products are a material part of the claimed invention—both elements that must be plead to state a claim for contributory infringement.  *Affinity Labs*, 2014 WL 2892285, at *8.  Because Sable's contributory infringement claim lacks factual support for essential elements of the claim, it is deficient and should be dismissed.

### 3.     Sable Fails to Allege Any Facts to Plead Willful Infringement

Sable's Complaint does not contain any factual support for a claim of willful infringement. "To state a claim for willful infringement, a plaintiff must allege facts plausibly showing that as of the time of the claim's filing, the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks*, 2019 WL 3940952, at *3 (W.D. Tex. Jul. 26, 2019) (internal quotations omitted). And "a plaintiff should plead willfulness with sufficient articulation of the relevant facts." *Id.* Here, the Complaint does not articulate facts showing that the required elements of willful infringement are present. Sable has not plausibly plead that Forcepoint had pre-suit knowledge of the Asserted Patents. *See supra* Section IV.B.1. Sable also fails to plausibly plead that Forcepoint directly infringed the Asserted Patent, much less that Forcepoint knew its conduct constituted infringement of that patent. *See supra* Section IV.A.

Enhanced damages for willful infringement "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for *egregious* infringement behavior" such as behavior "characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (emphasis added). Nothing in Sable's Complaint indicates that Forcepoint has infringed the Asserted Patents, much less done so egregiously. Sable's request for treble damages is baseless and its inclusion is not justified by any factual assertions in the Complaint. Accordingly, Sable's claim of willful infringement should be dismissed.

### V.     CONCLUSION

For the reasons set forth in this motion, Sable's allegations of direct, indirect, and willful infringement of the Asserted Patents are insufficient under FED. R. CIV. P. 12(b)(6). Because

Plaintiffs have failed to state a claim for relief, this Court should grant this motion and dismiss the complaint in its entirety.

Dated: May 17, 2021

By:   */s/Kevin J. Meek*
       Kevin J. Meek
       Texas Bar No. 13899600
       Brian W. Oaks
       Texas Bar No. 24007767
       **BAKER BOTTS L.L.P.**
       98 San Jacinto Blvd #1500
       Austin, TX 78701
       Telephone: (512) 322-2500
       Facsimile: (512) 322-2501
       kevin.meek@bakerbotts.com
       brian.oaks@bakerbotts.com

       *Attorneys for Defendant Forcepoint LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on  May 17, 2021, the foregoing was filed electronically in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service on May 17, 2021.

       */s/Kevin J. Meek*
       Kevin Meek